**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRANDON HART,<br><br>*Plaintiff,*<br><br>v.<br><br>CENTRAL INTELLIGENCE AGENCY, et al.,<br><br>*Defendants.* | **Case No. 1:25-CV-3002-RCL** |

## MEMORANDUM OPINION

Plaintiff Brandon Hart, proceeding *pro se*, brought suit against the Central Intelligence Agency ("CIA") and the United States under the Federal Tort Claims Act ("FTCA"). Compl., ECF No. 1. The allegations in Plaintiff's complaint are deeply troubling, describing a sustained effort by the federal government to, in simple terms, destroy Plaintiff's life. The CIA moved to dismiss the Complaint pursuant to Rules 8, 10, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. Defs.' Mot. to Dismiss ("CIA Mot."), ECF No. 10. For the reasons stated herein, the CIA's Motion to Dismiss will be granted.

## I. BACKGROUND

When precisely this case begins is unclear. But "it all started" when Plaintiff received an email which he believed offered him an opportunity to apply for a position at the CIA. Compl. at 4. When he received the email, Plaintiff alleges that he applied for the "Open Source part of the CIA," and was told that if he were accepted he would be informed indirectly. *Id.*

Plaintiff believed that his "indirect" acceptance had arrived in the form of a man who introduced himself to Plaintiff in a fitness center as "Bob Whyte." *Id.* In Plaintiff's account of the

encounter, Mr. Whyte provided Plaintiff with a brochure on mentorship, which reminded Plaintiff that he had requested a mentor in his CIA application. *Id.* But when Plaintiff later visited the CIA website, he found that "there [was] no mention of a branch of the CIA that is called Open and no application page and nothing like . . ." the application page that he had seen before. *Id.* Plaintiff therefore deduced that either 1) the CIA sent him a unique link or 2) that someone had made up the website. *Id.* Plaintiff admits that he was "not sure if the CIA does that sort of thing." *Id.*

At the time, Plaintiff was employed as a contractor and aspired to become a referee in the NBA. *Id.* At another undefined point in time, Plaintiff alleges that he received a book from an anonymous sender which discussed a police officer who had worked undercover in the NBA to combat organized crime. *Id.* at 5. Plaintiff believed this event to be an indirect suggestion that he should go undercover as well. *Id.* But Plaintiff admits that he does not know who was behind it, speculating that either 1) he was supposed to be working undercover for the police or 2) he had been approached by members of organized crime. *Id.* Notably, Plaintiff did not apparently suspect the CIA or the federal government. *See id.*

Plaintiff alleges that he experienced a related encounter when he took his children to a basketball game at the University of North Carolina. *Id.* at 6. Plaintiff recounts being approached in the line for the bathroom by a man who introduced himself as the former mayor of Chapel Hill and began talking about how refereeing "can be a great way to make money on making bad calls." *Id.* Considering the book he had received in the mail, Plaintiff believed that he was being "approached for illegal gambling." *Id.* But Plaintiff "didn't know if [he] was being tested by a Conference or the NBA, or if it was a [p]olice agency . . . ." *Id.* Again, Plaintiff does not allege that the CIA or federal government were involved. *See id.*

Later encounters confirmed Plaintiff in his belief that he "was be[ing] recruited one way or another." *Id.* at 7. Plaintiff alleges, for example, that someone staged his divorce. Plaintiff recounts a visit to his usual bar on the way home from work when a young woman suddenly approached and began to kiss him. *Id.* Plaintiff engaged in a more intimate physical relationship with the woman that evening which ultimately precipitated his divorce. *Id.* Based on those events, Plaintiff alleges that he "was profiled" by someone who knew that he could be overwhelmed by such a sudden encounter. *Id.*

But again, Plaintiff does not allege that the CIA or federal government was in any way involved in those incidents. *See id.* In fact, Plaintiff claims that he told the FBI that he "was being recruited by organized crime." *Id.* at 8. Subsequently, Plaintiff alleges that someone put his company after business. *Id.* Again, Plaintiff does not specify the culpable party in his allegation. *Id.* ("They put me out of business . . . .").

Plaintiff's later allegations also discuss the involvement of "organized crime" rather than any federal agency. For example, Plaintiff alleges that Mr. Whyte (the gentleman who introduced himself in the fitness center lockeroom) had instructed "a guy who looked like [what] you think a mafia guy would look like" to threaten to kill the Plaintiff if he did not "go back into refereeing" and work for Mr. Whyte. *Id.* The CIA's involvement in this incident, and in car accidents which Plaintiff believes were staged, is unclear from Plaintiff's Complaint. *Id.* at 8–9.

The CIA reappears, though, when Plaintiff alleges that he and his children "were poisoned by some means," possibly through groceries that were delivered to his home. *Id.* at 9. Plaintiff claims that the "Open Source Division" application, which began this whole series of events, told him that "people can work as different places and place drugs or poison in people's food." *Id.* at 9–10. Plaintiff later alleges that the poison in question was LSD. Pl.'s Opp. at 3.

Plaintiff filed the present lawsuit against the CIA and the United States in 2025. Though somewhat unclear, the Complaint implicates the FTCA and the Freedom of Information Act ("FOIA"). Compl. at 11. Plaintiff seeks $3 billion in lost wages and $750 million in punitive damages. Pl.'s Opp. at 3. The CIA filed its Motion to Dismiss on January 12, 2026. The Motion is now fully briefed and ripe for the Court's review.

## II. LEGAL STANDARDS

### A. 12(b)(1) Standard

"A motion for dismissal under Rule 12(b)(1) 'presents a threshold challenge to the court's jurisdiction.'" *Dvorak v. U.S. Dep't of Homeland Sec.*, No. 18-cv-1941, 2019 WL 1491743, at *1 (D.D.C. Apr. 3, 2019) (quoting *Hasse v. Sessions*, 835 F.2d 901, 906 (D.C. Cir. 1987)).

Federal jurisdiction is limited by Article III of the Constitution. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 145 S. Ct. 41, 47 (2025). "Federal courts are empowered—and indeed, have an obligation—to undertake an independent investigation to assure itself of its own subject-matter jurisdiction." *Schindler Elevator Corp. v. Wash. Metro. Area Transit Authority*, 514 F. Supp. 3d 197, 202 (D.D.C. 2020); *see also In re Sealed Case*, 131 F.3d 208, 210 (D.C. Cir. 1997) ("All federal courts[] 'are under an independent obligation to examine [their] own jurisdiction....'" (quoting *FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 231 (1990))). The Supreme Court has confirmed that "the court cannot proceed unless it makes an independent determination that it has jurisdiction." *Riley v. Bondi*, 145 S. Ct. 2190, 2201 (2025).

"When ruling on a Rule 12(b)(1) motion, the court must 'treat the complaint's factual allegations as true' and afford the plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (quoting *Delta Air Lines,*

*Inc. v. Export-Import Bank of U.S.*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015). "Those factual allegations, however, receive 'closer scrutiny' than they would if the court were considering a Rule 12(b)(6) motion for failure to state a claim." *Dvorak*, 2019 WL 1491743, at *3 (quoting *Han*, 223 F. Supp. 3d at 103).

### B. Pro Se Litigants

"[C]omplaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers." *Butler v. Cal. State Disbursement Unit*, 990 F. Supp. 2d 8, 8 (D.D.C. 2013) (Jackson, J.) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

"[W]hen weighing whether a pro se plaintiff has stated a claim, courts must treat 'technical deficiencies in the complaint . . . leniently' and 'scrutinize[]' the 'entire pleading ... to determine if any legally cognizable claim can be found.'" *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024) (alterations in original) (quoting Wright, Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, Federal Practice and Procedure § 1286 (4th ed. 2021)).

## III. ANALYSIS

Defendants have moved to dismiss Plaintiff's complaint pursuant to Rules 8, 10, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. CIA Mot. at 2, 4–5, 6–7. Because Defendants' 12(b)(1) argument is jurisdictional, the Court begins and ends there.

### A. Jurisdiction Over FTCA Claims

#### i. Standing

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 144 S. Ct. 1540, 1554 (2024). "For there to be a case or controversy under Article III, the plaintiff must have a "personal stake'

in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Rained v. Byrd*, 521 U.S. 811, 819 (1997)).

"To establish standing . . . a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *All. for Hippocratic Med.*, 144 S. Ct. at 1555.

"The causation requirement is central to Article III standing." *Id.* at 1557 (quoting *Allen v. Wright*, 468 U.S. 737, 760 (1984)). "To establish causation, a plaintiff must show that it is plausible that defendants proximately caused plaintiff's injury in fact." *Sweigert v. Perez*, 334 F. Supp. 3d 36, 44 (D.D.C. 2018) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545–46 (2007)). At the pleading stage, a plaintiff "must simply allege facts that plausibly support the proffered causal connection." *Pierce v. Yale Univ.*, No. 17-cv-02508, 2019 WL 162029, at *4 (D.D.C. Jan. 10, 2019) (citing *In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 23 (D.D.C. 2014)).

Plaintiff has not shouldered that light burden because his complaint does not provide any plausible basis to suggest that the CIA caused his injuries. Consider the beginning of the CIA's alleged interference in Plaintiff's life through Bob Whyte. *See* Compl. at 4. Though Plaintiff believed that Mr. White was approaching him as part of his application to the CIA, Plaintiff himself recognizes that there is no mention of the division of the CIA to which he was applying on the website. *See id.*

And consider Plaintiff's other allegations. Though Plaintiff often states that he suspected "organized crime" or police, he nowhere connects those allegations to the CIA or the federal government. *See, e.g.*, Compl. at 5, 7, 8, 9. Plaintiff's Complaint and Opposition are consistently equivocal about the CIA's involvement. *See, e.g.*, *id.* at 15 ("My culprits used the CIA name as an imposter to destroy my life, or the CIA has involvement in this happening."); *id.* at 22 ("If it was not the FBI, then obviously someone impersonated an FBI agent on Match.com . . . ."); *id.* at 26 ("If this was not a genuine CIA application, then I would like the CIA to let me know . . . ."); *id.* (alleging a sexual assault staged by local police); Pl.'s Opp. at 2 ("[T]he CIA did this to me, or someone acted in place of the CIA and used the CIA[']s name to control me as an Asset.").

The Court has truly searched the complaint but cannot glean a cohesive narrative that sufficiently implicates the CIA or the federal government. Even when alleging that the CIA poisoned him and his family, Plaintiff makes no factual assertion that implicates the CIA. Instead, he reasons that because the "CIA HAS GIVEN ITS AGENTS LSD," "BRANDON AND HIS DAUGHTER WERE GIVEN A TYPE OF LSD . . . ." Pl.'s Opp. at 3.

In sum, Plaintiff has not demonstrated "that it is plausible that defendants proximately caused plaintiff's injury in fact." *Sweigert*, 334 F. Supp. 3d at 44. Accordingly, Plaintiff's complaint must be dismissed for lack of standing pursuant to Rule 12(b)(1).

ii. Exhaustion

The Court would also independently lack jurisdiction over Plaintiff's FTCA claims. The FTCA "bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. U.S.*, 508 U.S. 106, 113 (1993). And "[t]he D.C. Circuit has consistently held that the 'FTCA's requirement of filing an administrative complaint with the

appropriate agency prior to instituting an action [is] jurisdictional.'" *Norton v. U.S*, 530 F. Supp. 3d 1,6 (D.D.C. 2021) (quoting *Simpkins v. Dist. of Columbia*, 108 F.3d 366, 371 (D.C. Cir. 1997)).

"[T]he burden of proving that the exhaustion requirement has been satisfied rests with the plaintiff." *Smith Thee v. U.S. Secret Serv.*, No. 24-668, 2025 WL 295630, at *4 (D.D.C. Oct. 17, 2025). And "[p]ro *se* litigants are 'held to the same standard as litigants with counsel' where presentment is concerned." *Miles v. U.S.*, No. 24-2016, 2025 WL 1148348, at *3 (D.D.C. Apr. 18, 2025) (quoting *Youmans v. Fed. Motor Carrier Safety Admin*, No. 21-1381, 2022 WL 2982453, at *3 (D.D.C. July 28, 2022)).

Here, Plaintiff claims that he "filed an Administration Claim with the CIA over a year ago." Compl. at 2–3; *see also* Pl.'s Opp. at 3 ("Brandon Hart has submitted an administrative claim, and the CIA has not responded."). At this stage, the Court must assume Plaintiff's factual claim to be true. But it is still not sufficient.

"In order to satisfy the FTCA's administrative-exhaustion requirements, a plaintiff must first present her claim in writing to the appropriate federal agency within two years of the claim's accrual." *Stewart v. U.S. Postal Serv.*, No. 21-2573, 2021 WL 4819898, at *2 (D.D.C. Oct. 15, 2021) (citing 28 U.S.C. § 2401(b)). Even taking all of Plaintiff's allegations as true, he has not plead any facts suggesting that his claim was timely. Based on the Complaint, the Court cannot even confidently determine when some of the claims would have accrued.

And even if Plaintiff had plead facts suggesting that he had filed an administrative complaint in a timely manner, the Court cannot determine the form of the complaint. That is significant because "'informal complaints or requests to [an agency] do not suffice' for the

purposes of administrative exhaustion." *Id.* (quoting *Davis v. United States*, 944 F. Supp. 2d 36, 39 (D.D.C. 2013)).

Because Plaintiff has not plead facts, even liberally construed, sufficient to demonstrate that he exhausted his administrative remedies, the Complaint must be dismissed pursuant to Rule 12(b)(1).

**B. Jurisdiction Over FOIA Claim[1]**

Plaintiff's Complaint alleges that the CIA "lied about the FOIA request and withheld information that could have saved [his] business." Compl. at 3. Defendants do not address this claim. *See* CIA Mot. Plaintiff has another standing problem here because he has not sufficiently alleged that he has suffered injury-in-fact.

In the FOIA context, a "requester is injured-in-fact for standing purposes because he did not get what the statute entitled him to receive." *Wetzel v. U.S. Dep't of Veterans Affs.*, 949 F. Supp. 2d 198, 202 (D.D.C. 2013) (citing *Zivotofsky ex rel. Ari. Z. v. Sec'y of State*, 444 F.3d 614, 617–18 (D.C. Cir. 2006)).

Plaintiff believes that he was entitled to information detailing his involvement with the CIA. Compl. at 12. Plaintiff concedes that the CIA responded, telling him that they had no information related to him. *Id.* at 2. Assuming all those facts to be true, Plaintiff has not sufficiently alleged an injury in fact because the CIA's response that they have no such records "is accorded a presumption of good faith, which the requester cannot rebut with "purely speculative claims about the existence and discoverability of [the request]." *Eddington v. U.S. Dep't of Def.*,

---

[1] Notably, Plaintiff's Civil Cover Sheet does not indicate that he is suing under the FOIA. ECF No. 1-1 at 2.

35 F.4th 833, 837 (D.C. Cir. 2022) (alterations in original) (quoting *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

Therefore, Plaintiff's complaint does not plead facts sufficient to allege any injury-in-fact. Accordingly, any FOIA claim must be dismissed pursuant to Rule 12(b)(1).

## IV. CONCLUSION

Because the Court has determined that it lacks have subject-matter jurisdiction, it does not reach the remaining arguments addressed in the CIA's motion. *See Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. . . . when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

For the reasons stated herein, the CIA's Motion to Dismiss will be granted. Plaintiff's remaining motions will accordingly be denied as moot.

An Order accompanying this Memorandum Opinion shall issue.

Date: 28 September, 2026

Hon. Royce C. Lamberth
United States District Judge